**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**SHAWNDERIC LAMARR HORTON**                                                                 **PLAINTIFF**

**v.**                                                        **CIVIL ACTION NO. 1:13cv508-MTP**

**CAPTAIN BRENDA SIMS, et al.**                                                   **DEFENDANTS**

## OPINION AND ORDER

THIS MATTER is before the Court on a Motion for Summary Judgment [42] filed by Defendants Johnnie Denmark, Mae McCarthy and Brenda Sims. Having carefully considered the submissions of the parties and the applicable law, the Court finds that Defendants' Motion for Summary Judgment should be granted.

FACTUAL BACKGROUND

Plaintiff Shawnderic Lamarr Horton, proceeding *pro se* and *in forma pauperis*, filed his Complaint [1] pursuant to 42 U.S.C. § 1983 on December 28, 2012. Plaintiff is currently incarcerated at the South Mississippi Correctional Institution ("SMCI"), in Leakesville, Mississippi, after having been convicted of capital murder. SMCI is operated by the Mississippi Department of Corrections ("MDOC"). Plaintiff's claims arise from events that occurred while he was incarcerated at SMCI. Through his complaint and as clarified during his *Spears*[1] hearing, Plaintiff alleges that he was wrongfully accused by SMCI employees of possessing a cell phone, received Rule Violation Reports ("RVRs") despite his innocence, placed in a restrictive unit for inmates who have violated cell phone polices and his requests to appeal the RVRs were improperly denied. Essentially, Horton

---

[1]*Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). Horton's *Spears* hearing took place on November 25, 2013. The contents of the hearing were filed as an Omnibus Order [46].

1

has stated a claim for deprivation of liberty without adequate due process. The undersigned will discuss Horton's allegations more fully *infra*. Plaintiff seeks approximately $1,500 in monetary damages, as well as dismissal and expungement of the RVRs in question from his record.

Defendants filed their Motion for Summary Judgment [42] on July 8, 2014. Plaintiff responded [42] to Defendants' motion on July 21, 2014.

## STANDARD

Federal Rule of Civil Procedure 56(a) provides that the court shall grant summary judgment if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. If a party fails to properly support an assertion of facts or fails to properly address another party's assertion of fact as required, the court may grant summary judgment if the motion and supporting materials–including the facts considered undisputed–show that the moving party is entitled to it. FED. R. CIV. PRO. 56(e). Summary judgment is proper "where a party fails to establish the existence of an element essential to his case and on which he bears the burden of proof." *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir. 1988). "A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact." *Id.*

This court may grant summary judgment only if, viewing the facts in a light most favorable to the plaintiff, the defendant demonstrates that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). If the defendant fails to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. State of Louisiana*, 757 F.2d 698, 708 (5th Cir. 1985). The existence of an issue of material fact is a question of law that the court must

decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *Id.* at 712 (quoting *U.S. Steel Corp. v. Darby*, 516 F.2d 961, 963 (5th Cir. 1975)).

## ANALYSIS

Defendants claim they are entitled to sovereign and qualified immunity as to Horton's claims against them in both their official and individual capacities.

<u>Eleventh Amendment Immunity</u>

Defendants claim they are entitled to sovereign immunity regarding Horton's claims against them in their official capacities as MDOC officers or employees. The Eleventh Amendment to the United States Constitution "bars an individual from suing a state in federal court unless the state consents to the suit or Congress has clearly and validly abrogated the state's sovereign immunity. *Kermode v. Univ. of Miss. Med. Ctr.*, 496 Fed. App'x 483, 487 (5th Cir. 2012) (citing *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 336 (5th Cir. 2002)). The State of Mississippi has not consented to this suit, and Congress have never acted to abrogate Eleventh Amendment immunity for Section 1983 purposes. *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 186 (5th Cir. 1986) ("Section 1983 does not override the Eleventh Amendment bar.") Sovereign immunity extends to any state agency or entity deemed to be "an arm of the state." *Perez*, 307 F.3d at 326. Thus, it is necessary to determine whether MDOC is an arm of the state. The Fifth Circuit has provided six factors for this analysis:

> (1) whether state statutes and case law view the entity as an arm of the state; (2) the source of the entity's funding; (3) the entity's degree of local autonomy; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) whether the entity has the authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use

property.

*Perez*, 307 F.3d at 326-27. An entity need not satisfy all six factors, rather, the factors "simply provide guidelines for courts to balance the equities and determine if the suit is really one against the state itself." *Id.* at 327.

An application of the above factors establish that MDOC is an arm of the state. First, MDOC is considered an arm of the state by Mississippi statute. *See* Miss. Code Ann. § 47-5-1, et. seq.; *see also Scott v. MDOC*, No. 2:05cv2159-KS-JMR, 2006 WL 1666258, at *2 (S.D. Miss. Jun 12, 2006) ("The MDOC is an agency of the State of Mississippi as created by the statutes thereof . . . .") Next, MDOC is funded by the State. *See* http://www.mdoc.state.ms.us/division_of_administration.htm ("MDOC is appropriated funds each fiscal year (July 1 - June 30) by the Mississippi Legislature."). Regarding the fourth factor, MDOC is responsible for the confinement of prisoners throughout the State of Mississippi. Regarding the fifth factor, MDOC has the authority to sue and be sued in its own name. *See Scott*, 2006 WL 1666258. Finally, regarding the sixth factor, MDOC is authorized to hold and use property. *See* Miss. Code Ann. § 47-5-5 (stating that the MDOC Commissioner "is authorized to receive and disburse private and public grants, gifts and bequests which may be available to this state for correctional facilities . . . which said sum so received shall be subject to all the law applicable to the State Fiscal Management Board."). For these reasons, the undersigned finds that MDOC is an arm of the State of Mississippi for purposes of the Eleventh Amendment.

As MDOC is an arm of the state, its officers and employees are, in fact, officers and employees of the state, and are likewise entitled to sovereign immunity from monetary damages in their official capacity. *See Am. Bank and Trust Co. v. Dent*, 982 F.2d 917, 921 (5th Cir. 1993) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("a suit against a state official in his or

4

her official capacity . . . is no different from a suit against the State itself.")). Accordingly, Defendants have immunity against Horton's monetary claims under Section 1983.[2]

Qualified Immunity

Defendants have also raised the defense of qualified immunity, as Eleventh Amendment sovereign immunity does not apply to plaintiff's claims for relief in Defendants' individual capacities. The United States Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Fifth Circuit "has repeatedly held that objective reasonableness in a qualified immunity context is a question of law for the court to decide, not an issue of fact."  *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 256 (5th Cir. 2005); *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999); *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994). Courts evaluating Section 1983 claims should conduct a two-prong inquiry to determine whether defendants are entitled to qualified immunity. First, "whether a constitutional right would have been violated on the facts alleged," and second, "whether the right was clearly established. *McClendon v. City of Columbia*, 305 F.3d 314, 322-23 (5th Cir. 2002) (citing *Saucier v. Katz*, 533 U.S. 14, 200 (2001)).

---

[2]Notwithstanding Defendants' immunity in their official capacities for monetary damages, they are not entitled to sovereign immunity for prospective injunctive relief. This doctrine, set forth by the Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908), is an exception to the general prohibition of the Eleventh Amendment. *See Verizon Maryland, Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002) (holding that the *Ex Parte Young* exception applied to the Eleventh Amendment bar for claims for injunctive relief against defendants in their official capacities). Although Horton does seek injunctive relief in the form of a dismissed and expunged RVR, such relief is not prospective. Thus, Horton's claim does not fall under the *Ex Parte Young* exception to the Eleventh Amendment.

Once the defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon*, 305 F.3d at 323. "The defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority." *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992). Because Defendants have raised the defense of qualified immunity in a motion for summary judgment, Horton "can no longer rest on the pleadings ... and the court looks to the evidence before it (in the light most favorable to the plaintiff) when conducting the [qualified immunity analysis]." *McClendon*, 305 F.3d at 323 (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)). Accordingly, this court must examine the summary judgment record and determine whether Horton has adduced sufficient evidence to raise a genuine issue of material fact suggesting that Defendants' conduct violated an actual constitutional right for each claim, and whether their conduct was objectively unreasonable in light of clearly established law. *McClendon*, 305 F.3d at 323.

<u>Horton's Claims</u>

Horton claims that on September 2, 2012, he was stopped in the dining hall at SMCI by Defendant Brenda Sims.[3] Horton alleges that Sims searched the area where he and two inmates had been working, and found a cell phone, tobacco and a cell phone battery, for which he received three RVRs.[4] Horton that Defendant Sims contradicted herself when she wrote up the RVRs.[5] He also alleges that Defendant Mae McCarthy, the disciplinary chairperson and RVR hearing officer,

---

[3]Omnibus Order [38] at 2.

[4]*Id*.

[5]*Id*.

admitted at the RVR hearing that he was innocent, but declined to find him innocent in the report.[6] Last, Horton alleges that the associate Warden at the time, Johnnie Denmark, did not follow policy and procedure during his appeal process of the RVRs. Horton does not state any specific policy violations by Denmark, but alleges that Denmark knew Horton was innocent and was in the position to correct the situation.[7] Due to the RVRs, Horton was sent to live in the "cell phone unit" for sixteen months. This unit is much more restrictive than general population, and Horton complains that he is not able to attend religious services or receive visitors.[8] The Court construes Horton's allegations to be a deprivation of liberty withou due process claim, as Horton's main complaint appears to be that he did not belong in the restrictive housing unit

Horton's loss of privileges and time spent in the cell phone unit does not entitle him to relief under Section 1983. A prisoner is not automatically entitled to constitutional protections when the conditions of his confinement are altered as punishment for a disciplinary violation. *Gaona v. Erwin*, 224 Fed. App'x 327, 328 (5th Cir. 2007) (holding that the loss of privileges does not implicate the due process clause); *Wilkerson v. Stalder*, 329 F.3d 431, 435-36 (5th Cir. 2003) (holding that a prisoner has no liberty interest in a custodial classification); *Pichardo v. Kinker*, 73 F.3d 612, 612-13 (5th Cir. 1996) (holding that administrative lockdown is incident to the ordinary life of a prisoner). The Fifth Circuit has specifically held that the imposition of inmate segregation and loss of privileges does not implicate due process concerns. *Madison v. Parker*, 104 F.3d 765, 767-68 (5th Cir. 1997). Therefore, the Defendants in this case are entitled to qualified immunity in regard to this

---

[6] *Id.*

[7] *Id.* at 3.

[8] *Id.*

7

claim, and Horton's due process claim will be dismissed.

Insofar as Horton's allegations can be construed as an objection to the denial of his Administrative Remedy Procedure ("ARP") grievances by Defendant Denmark, this claim also fails. Federal prisoners do not have protected interest in having "grievances resolved to [their] satisfaction." *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). Morever, the total failure to investigate is not a constitutional violation. *Dehghani v. Vogelsang*, 226 Fed. App'x 404, 406 (5th Cir. 2007). For these reasons, Defendant Denmark has not violated any constitutional right of Horton, and thus have qualified immunity from this claim. *McClendon*, 305 F.3d at 323.

## CONCLUSION

For the reasons stated above, the court finds that Defendants' Motions for Summary Judgment [42] should be GRANTED. Accordingly,

IT IS, THEREFORE, ORDERED:

1. That Defendants' Motions for Summary Judgment [42] is GRANTED and this action is dismissed with prejudice.

2. A separate judgment in accordance with Federal Rule of Civil Procedure 58 will be filed herein.

SO ORDERED this the 17th day of October, 2014.

                                                s/ Michael T. Parker
                                                United States Magistrate Judge